# HOPKINS & SCHAFKOPF, LLC
### ATTORNEYS AT LAW

December 11, 2017

U.S. District Court, ED of PA
Office of the Clerk of Court
U.S. Courthouse
601 Market Street, Room 2609
Philadelphia, PA 19106

**Re: Jay and Juanita Griscom v. Greenbriar Marketing Management Inc., et al**

To Whom It May Concern:

Enclosed please find one (1) original and one (1) copy of Plaintiff's Civil Action Complaint, along with a CD containing a pdf version of same and a check in the amount of $400.00, in regards to the above captioned matter.

Kindly file the original Complaint and return a time-stamped copy to the undersigned along with the Civil Action Summonses.

Sincerely,

Gary Schafkopf, Esq.

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Jay and Juanita Griscom

**DEFENDANTS**
Greenbriar Marketing & Management Inc and Lawrence Higgins

**(b)** County of Residence of First Listed Plaintiff    Gloucester County NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Lehigh County PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Schafkopf Law LLC 11 Bala Ave, Bala Cynwyd PA 19004 610-664-5200
Weisberg Law, 7 S. Morton Ave, Morton PA 19070 610-690-0801

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question *(U.S. Government Not a Party)*
☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                                     Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332
Brief description of cause:
Defendants breached their contract with Plaintiff to build a modular home.

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
12/11/2017

SIGNATURE OF ATTORNEY OF RECORD
*Jay Schafkopf*

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Jay and Juanita Griscom | : | CIVIL ACTION |
| | : | |
| v. | : | |
| Greenbriar Marketing & Management Inc | : | |
| et al | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                                   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                                                            ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court.  (See reverse side of this form for a detailed explanation of special
     management cases.)                                                                                              ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X)

| | | |
|---|---|---|
| 12-11-17 | Gary Schafkopf, Esq | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-664-5200 | 888-283-1334 | gary@schaflaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 218 Porches Mill Rd Swedesboro NJ 08085

Address of Defendant: 4440 S Cedarbrook Rd Allentown PA 18103

Place of Accident, Incident or Transaction: Woolwich New Jersey

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒

RELATED CASE, IF ANY:

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases
   (Please specify) Breach of Contract

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I, _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _____   _____   _____
Attorney-at-Law   Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12-11-17   _____   83362
Attorney-at-Law   Attorney I.D.#

CIV. 609 (5/2012)

**WEISBERG LAW**
Matthew B. Weisberg
Attorney ID No. 85570
7 South Morton Ave.
Morton, PA 19070
(610) 690-0801
Fax: (610) 690-0880
**Attorney for Plaintiffs**

**SCHAFKOPF LAW, LLC**
Gary Schafkopf
Attorney ID No. 83362.
11 Bala Avenue
Bala Cynwyd, PA 19004
Gary@Schaflaw.com
(610) 664-5200 Ext. 104
Fax: (888) 283-1334
**Attorney for Plaintiffs**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **JAY GRISCOM**<br>218 Porches Mill Rd<br>Swedesboro, NJ 08085 | : CIVIL ACTION<br>:<br>: |
| and | : No.<br>: |
| **JUANITA GRISCOM**<br>218 Porches Mill Rd<br>Swedesboro, NJ 08085 | : COMPLAINT<br>:<br>:<br>: |
| Plaintiffs, | : **JURY OF TWELVE (12) JURORS**<br>: **DEMANDED** |
| v. | :<br>: |
| **GREENBRIAR MARKETING &<br>MANAGEMENT, INC.**<br>4440 S. Cedarbrook Road<br>Allentown, PA 18103 | :<br>:<br>:<br>:<br>: |
| and | :<br>: |
| **LAWRENCE HIGGINS**<br>4440 S. Cedarbrook Road<br>Allentown, PA 18103 | :<br>:<br>: |
| Defendants. | : |

## <u>CIVIL ACTION COMPLAINT</u>

Plaintiffs Jay Griscom and Juanita Griscom ("Plaintiffs"), hereby file this Complaint

against Defendant Greenbriar Marketing & Management, Inc. and Defendant Lawrence Higgins,

and, in support hereof, avers as follows:

## JURISDICTION

1. Venue is proper in the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b)(1), as at least one (1) Defendant resides, maintains a principal place of business, and/or does business in the Eastern District of Pennsylvania.

2. Jurisdiction of this Honorable Court is based on diversity of citizenship. 28 U.S.C. § 1332., the amount in controversy, exclusive of interest and costs exceeds the sum of $75,000.00

## PARTIES

3. Plaintiffs Jay Griscom and Juanita Griscom are individuals and husband and wife residing at 218 Porches Mill Rd Swedesboro, NJ 08085.

4. Greenbriar Marketing & Management, Inc. ("Greenbriar"), is a corporation duly organized under the laws of the Commonwealth of Pennsylvania, doing business at the above-captioned address.

5. Upon information and belief, Lawrence Higgins ("Higgins") is the President of Defendant Greenbriar Marketing & Management, Inc., doing business at the above-captioned address.

## OPERATIVE FACTS

6. In 2016 Plaintiffs made the decision to sell their home in Woolwich Township New Jersey and purchase a modular home.

7. At all times relevant Defendant Greenbriar Marketing & Management, Inc. is a seller of modular homes, and Defendant Lawrence Higgins is President of Greenbriar Marketing & Management, Inc. (hereafter collectively "Defendants").

8.  Defendant Lawrence Higgins has worked in the residential sales industry for at least two decades, and at times has acted as owner and President of multiple home sales corporations.

9.  Given Defendant Higgin's long-established reputation in the residential sales industry, Plaintiffs' entered into an agreement with Defendant, Greenbriar and Defendant Higgins regarding he purchase, construction, and delivery of their modular home.

10. Based on Defendants' representations and relationship, Plaintiffs elected to forgo consideration of a similar modular home company competitor.

11. In October 2016 Plaintiffs' entered into an agreement of sale to sell their home in Woolwich New Jersey.

12. The buyers of the home agreed to delay the settlement date until May 1, 2017, to allow Plaintiffs time have Defendants manufacture and deliver the modular home to Plaintiffs'.

13. At all times relevant, Defendants held themselves out as builders lawfully permitted to engage in the sales, delivery, and/or construction of new homes in New Jersey.

14. Prior to executing a contract, Defendants were aware that Plaintiffs' would be selling their primary residence and would need to have the modular home completed before the Plaintiffs' were required to leave the property.

15. Prior to signing a contract, Defendants assured Plaintiffs that the new home would be manufactured and delivered in advance of Plaintiffs' move-out from their home in Woolwich, New Jersey.

16. On, or about, December 29, 2016, Plaintiffs entered into a contract with Defendant Greenbriar Marketing & Management, Inc. ("Agreement"). **EXHIBIT A**

17. Defendants advised Plaintiffs' that building plans would be delivered within two weeks from the date that Plaintiffs' signed the contract and Plaintiffs' provided Defendants a deposit in order to allow the land engineer to begin all necessary work.

18. Relying on assurance from Defendants, that the building plans would be delivered in two weeks Plaintiffs contracted with third-parties for land survey, topography, and septic percolation tests at Plaintiffs expense.

19. Defendants knew, at all times relevant, that installation of a modular home would require Plaintiffs' to obtain services for land survey, topography, and septic testing.

20. Relying on assurance from Defendants, Plaintiffs remitted deposits to their land engineer and their septic engineer.

21. Per Agreement, the total price of $139,408.08 included the costs of base price unit, set-up, optional equipment, sales tax, and various non-taxable items.

22. Per the Agreement, Plaintiffs were responsible for payment of remaining balance, minus all deposits, UPON COMPLETED PRODUCTION AT FACTORY.

23. Per the Agreement, an options allowance of $17,300.00 was provided by Defendants to Plaintiffs.

24. Per the Agreement, the salesperson responsible for Agreement was Defendant Lawrence Higgins.

25. Per the Agreement, delivery of the modular home to Woolwich Township, NJ was scheduled for mid-March 2017.

26. Upon information and belief, the modular home was to be manufactured by Eagle River Homes, Inc. of Leola, Pennsylvania.

27. Defendants obligations included, but were not limited to, the contracting for the manufacturing of the modular home, obtaining all necessary permits and the installation of a modular home to a predetermined site in Woolwich Township, NJ.

28. Plaintiffs paid to Defendants a down payment/deposit of the sum of TWENTY-EIGHT THOUSAND DOLLARS 00/100 ($28,000.00) via check, pursuant to the Agreement to begin production. **EXHIBIT B**

29. Plaintiffs were advised by the Defendants that the $28,000.00 would be for the cost of the initial materials required to begin manufacturing the home.

30. On, or about, January 1, 2017, Defendants cashed or deposited the check for $28,000.00.

31. Plaintiffs' believed that after providing Defendants with the aforesaid deposit would allow production to begin and were never advised that production on the modular home could not begin until all the land permits, septic permits and building permits were secured by the Defendants.

32. Defendants failed to send plans to land engineer by January 31, 2017 to begin the process of obtaining the necessary permits.

33. Over the course of several weeks Defendants presented Plaintiffs' variations of the building plans which included incorrect materials and lay out issue.

34. Defendants presented a plan to Plaintiffs, on, or about, February 16, 2017, that exhibited an attic ladder as opening onto a counter top.

35. Defendants presented a plan to Plaintiffs, on, or about, February 23, 2017, that exhibited windows different from the originally chosen design.

36. Defendants presented unsealed factory plans to Plaintiffs on, or about, March 31, 2017, that incorrectly exhibited the front elevation.

37. As of March 31, 2017, Defendants had failed to procure acceptable buildings plans, permits and failed to deliver the completed home as agreed.

38. Plaintiffs submitted the incorrectly-drawn plans to land engineer on, or about, March 31, 2017, so to avoid further delay in construction.

39. Plaintiffs' also hired a third-party architect to design the basement and foundation plans.

40. On or about May 22, 2017 Plaintiffs received approval from the Gloucester County Health Department to begin work on the septic system.

41. In order to begin construction on the actual home Defendants needed to obtain a building permit.

42. Defendants failed to procure the necessary building permits and never began production on the modular home.

43. Plaintiffs' were unable to move into their new home at the agreed to date of mid-March 2017, as Defendant had failed to secure the necessary permits and did not begin to manufacture the home.

44. On, or about, May 12, 2017, a confirmation order was executed by Plaintiffs' and Defendant Greenbriar regarding new flooring and countertops as Defendant, Higgins advised Plaintiffs' their previous material selections were not available.

45. On or about May 26, 2017 Plaintiffs emailed Defendant Greenbriar stating that they would not be moving forward with the project and that they had lost all confidence in Defendants.

46. Upon terminating Defendants' contract, Plaintiffs discovered that Defendant was not a licensed builder in the state of New Jersey, as previously represented by Defendants.

47. Upon terminating the Defendants contract, Plaintiff contacted the owner of Eagle River Homes, Inc, the house manufactured and was informed that Defendants had never forwarded the Plaintiffs' deposit to Eagle River and had only forwarded $400.00 to Eagle River for the plans Defendants produced in March of 2017.

48. By letter, dated July 10, 2017, Defendants, by way of counsel, explicitly stated that Defendant Greenbriar "was, has been and is ready, willing and able to deliver the home [Plaintiffs] requested," but would not do so. **EXHIBIT C**

49. As of this filing date, Plaintiffs remain unable to move into their modular home as construction never started.

50. As of this filing date, Defendants have not commenced manufacture of the modular home, as per the Agreement.

51. As of this filing date, Defendants have not delivered a modular home, as per the Agreement.

52. As of this filing date, Defendants have failed to return any payments made by Plaintiffs to Defendants towards purchase and delivery of a modular home, as per the Agreement.

53. As of this filing, Defendants have not given any assurance that they intend to honor their obligations, as per the Agreement.

54. Plaintiffs' continue to experience financial harm as a result of Defendants failure to deliver the Plaintiffs' modular home.

## COUNT I – VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

55. All preceding paragraphs of this Complaint are incorporated herein as though fully set.

56. At all times material, Defendants' are "person(s)" engaged in the trade or commerce as that term is defined by the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law, 73 P.S. §201-1, et seq. ("UTPCPL").

57. Upon information and belief, neither Defendant is registered with the State of New Jersey, as required, per NJSA 46:3B-1 et seq.

58. Parties not registered with the State of New Jersey, per NJSA 46:3B-1 et seq., are unable to lawfully obtain permits and/or begin construction of any new home in the State of New Jersey.

59. Upon information and belief, Defendants have not furnished or assured a qualified warranty to Plaintiffs that satisfies New Jersey's New Home Warranty and Builders' Registration Act. NJSA 46:3B-1et seq.

60. Upon information and belief, relevant state and local codes require professional sealed and signed plans prior to securing permits and commencement of site development.

61. Defendants failed to secure necessary sealed and signed plans prior to having Plaintiffs' apply for permits.

62. Defendants' aforementioned conduct constitutes an "unfair or deceptive practice" within the meaning of the UTPCPL.

63. Defendants' failure to send sealed plans by May 31, 2017 to Plaintiff or related parties constitutes an "unfair or deceptive practice" within the meaning of the UTPCPL. *Id.*

64. Defendants' advertisement of modular homes with intent not to sell them as advertised constitutes an "unfair or deceptive practice" within the meaning of the UTPCPL. *Id.*

65. Defendants' attempt at collecting additional monies from Plaintiffs beyond the deposit constitutes an "unfair or deceptive practice" within the meaning of the UTPCPL. *Id.*

66. The UTPCPL authorizes the Court in its discretion to award up to three (3) times ("treble") the actual damages sustained for violations as well as attorneys' fees, for which Plaintiff is entitled. 73 P.S. § 201-9.2(a) et seq.

## COUNT II – FRAUD/FRAUDULENT MISREPRESENTATION

67. All preceding paragraphs of this Complaint are incorporated herein as though fully set.

68. Defendants' fraudulent misrepresentations included intentionally misrepresenting to Plaintiffs that they were at all relevant times lawfully able to deliver and install modular homes in Woolwich New Jersey.

69. Additionally, Defendants' fraudulent misrepresentations include intentionally misrepresenting to Plaintiffs to the following:

   a.  That it was reasonably possible Plaintiffs would be able to move into their modular home by mid-March.

   b.  That it was reasonably possible the modular home would be completed and ready for residence prior to the Plaintiffs' sale and leave of their current residence.

   c.  That Defendants would deliver satisfactory plans within two weeks after Agreement.

   d.  That Defendants are "ready, willing, and able to deliver the home [Plaintiffs] ordered and requested," since they have not yet commenced manufacture, nor tendered payment to manufacturer.

70. The aforementioned representations were material to the transaction, and made by Defendants with either knowledge of their falsity or recklessness as to whether or not they were true.

71. The aforementioned representations were made with the intent of misleading and inducing the Plaintiffs to rely upon them.

72. The Plaintiffs reliance on the representations was justified, and their resulting damages were proximately caused by said reliance on the representations made by Defendants.

73. As the direct and proximate results of the aforesaid, Plaintiffs sustained the aforesaid damages (incorporated by reference).

## COUNT III– BREACH OF CONTRACT/QUASI -CONTRACT

74. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

75. At all times material, Plaintiffs' and Defendants were parties to a contract (in the possession of Defendants), express and/or implied at law, of which Defendants are in breach, to Plaintiffs' great personal detriment and injury as aforesaid.

76. On, or about, December 29, 2016, Plaintiffs entered into a contract with Defendant Greenbriar Marketing & Management, Inc.

77. Defendants advised Plaintiffs' that building plans would be delivered within two weeks from the date that Plaintiffs' signed the contract and Plaintiffs' provided Defendants a deposit in order to allow the land engineer to begin all necessary work.

78. Per Agreement, the total price of $139,408.08 included the costs of base price unit, set-up, optional equipment, sales tax, and various non-taxable items.

79. Per the Agreement, Plaintiffs were responsible for payment of remaining balance, minus all deposits, UPON COMPLETED PRODUCTION AT FACTORY.

80. Per the Agreement, an options allowance of $17,300.00 was provided by Defendants to Plaintiffs.

81. Per the Agreement, the salesperson responsible for Agreement was Defendant Lawrence Higgins.

82. Per the Agreement, delivery to Woolwich Township, NJ was scheduled for mid-March 2017.

83. Plaintiffs' provided Defendants a $28,000.00 deposit.

84. As of this filing date, Plaintiffs remain unable to move into their modular home as construction never started.

85. As of this filing date, Defendants have not commenced manufacture of the modular home, as per the Agreement.

86. As of this filing date, Defendants have not delivered a modular home, as per the Agreement.

87. As of this filing date, Defendants have failed to return any payments made by Plaintiffs to Defendants towards purchase and delivery of a modular home, as per the Agreement.

88. At all times material, Defendants owed Plaintiffs' a duty of utmost fair dealing, to which said Defendants are in breach to Plaintiffs' great personal detriment and injury as aforesaid.

## COUNT IV – UNJUST ENRICHMENT

89. All preceding paragraphs of this Complaint are incorporated herein as though fully set.

90. Plaintiffs provided Defendant with $28,000.00 as a deposit towards total price of agreed upon modular home.

91. Plaintiffs justifiably paid considerable expense to third-parties in anticipation of construction and delivery of their home.

92. Plaintiffs' relied, to their detriment, upon Defendants' promise that it would deliver the aforesaid modular home within a reasonable time.

93. Defendants have been unjustly enriched because, to date, they have failed to commence performance, despite Plaintiffs' satisfaction of payment.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, their agents, servants, workmen and/or employees, individually, jointly and/or severally, for an amount in excess of $75,000.00, plus interest costs of suit, attorneys' fees, treble damages, statutory damages, compensatory damages, and punitive damages, plus other relief which this Honorable Court deems necessary and just.

Respectfully Submitted,

WEISBERG LAW

BY: */s/ Matthew Weisberg*
MATTHEW B. WEISBERG, ESQ.

DATED: *12-11-17*

SCHAFKOPF LAW, LLC

BY: *Gary Schf*
GARY SACHFKOPF, ESQ.

DATED: *12-11-17*

# EXHIBIT A

Greenbriar Marketing &
~~Land~~ Inc
4440 S. Cedarbrook Road
Allentown, PA 18103

LH436

396 7881

856·889·6760

| BUYER(S) JAY A & JUANITA A GRISCOM | PHONE 856·889·6300 | DATE 12/29/12 |
|---|---|---|

ADDRESS 150 OLIPHANT MILL RD. WOOLWICH TWNSHP N.J 08085   SALESPERSON LARRY

DELIVERY ADDRESS SAME

| MAKE & MODEL EAGLE RIVER SPECIAL DESIGN MODULAR | YEAR 2017 | BEDROOMS 3 | FLOOR SIZE L60 X32 | HITCH SIZE L60 317 | TOWNSHIP WOOLWICH |
|---|---|---|---|---|---|

| SERIAL NUMBER | ☒ NEW ☐ USED | COLOR CLAY | PROPOSED DELIVERY DATE MID MARCH | COUNTY GLOUCESTER |
|---|---|---|---|---|

THIS INSULATION INFORMATION WAS FURNISHED BY THE MANUFACTURER AND IS DISCLOSED IN COMPLIANCE WITH THE FEDERAL TRADE COMMISSION RULE 16CRF, SECTION 460.16.

| LOCATION | R-VALUE | THICKNESS | TYPE OF INSULATION |
|---|---|---|---|
| CEILING | | | |
| EXTERIOR | | | |
| FLOORS | | | |

| | BASE PRICE UNIT | $ 96,691 | |
|---|---|---|---|
| OPTIONAL EQUIPMENT | | 17,149 | — |
| SET UP | | 17,300 | — |
| SUB-TOTAL | $ | | |
| SALES TAX | | 7969 | 08 |
| NON-TAXABLE ITEMS | | 295 | — |

**OPTIONAL EQUIPMENT, LABOR AND ACCESSORIES**

| WHEELS AND/OR AXLES ARE TO BE RETURNED. | $ |
|---|---|
| CREDIT HAS BEEN GIVEN IN PURCHASE PRICE | |
| THIS CONTRACT CONTAINS NO PROVISION FOR | |
| REFUND OF THE DOWN PAYMENT IN THE EVENT | |
| THAT THE BUYER FAILS TO COMPLY WITH ITS | |
| TERMS AND CONDITIONS. | |
| NOTE: PA USE TAX HAS BEEN PAID ON THIS HOME, AS REQUIRED BY ACT 23 OF 2000. | |

DELIVERY TO SITE INCLUDED

UPTIONS - SEE ATTACHED EXHIBIT A

| CORNICE | — | 2500 | |
|---|---|---|---|
| SIDING | — | 0800 (NOT DOORBELL) | #17,300 |
| SET | — | 8000 | all allowance |
| TRIM | — | 3000 | |

| VARIOUS FEES AND INSURANCE | | | |
|---|---|---|---|
| 1. CASH PURCHASE PRICE | $ 139408 | 08 |
| TRADE-IN ALLOWANCE | $ N/A | |
| LESS BAL. DUE on above | $ | |
| NET ALLOWANCE | $ | |
| CASH DOWN PAYMENT | $ | |
| CASH AS AGREED (SEE REMARKS) | $ | |
| 2. LESS TOTAL CREDITS | $ | |
| SUB-TOTAL | $ | |
| SALES TAX (If Not Included Above) | $ | |
| 3. Unpaid Balance of Cash Sale Price | $ | |

**REMARKS:**

20 - 25 % (Factory Determined)
Balance Payable Upon Completed
Production At Factory

Pd $28,000   12/28

| BALANCE CARRIED TO OPTIONAL EQUIPMENT | $ |
|---|---|

NOTE: WARRANTY AND EXCLUSIONS AND LIMITATIONS OF DAMAGES ON THE REVERSE SIDE

| DESCRIPTION OF TRADE-IN | YEAR | SIZE |
|---|---|---|
| MAKE | MODEL | BEDROOMS |
| TITLE NO. N O N E SERIAL NO. | | COLOR |
| AMOUNT OWING TO WHOM | | |

ANY DEBT BUYER OWES ON TRADE-IN IS TO BE PAID BY ☐ DEALER ☐ BUYER

Dealer and Buyer certify that the additional terms and conditions printed on the other side of this contract are agreed to as a part of this agreement, the same as if printed above the signatures. Buyer is purchasing the above described manufactured home, trailer or vehicle; the optional equipment and accessories, the insurance as described has been voluntary; the Buyer's trade-in is free from all claims whatsoever, except as noted.

THIS AGREEMENT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN DEALER AND BUYER AND NO OTHER REPRESENTATION OR INDUCEMENT, VERBAL OR WRITTEN, HAS BEEN MADE WHICH IS NOT CONTAINED IN THIS CONTRACT. BUYER(S) ACKNOWLEDGE RECEIPT OF A COPY OF THIS ORDER AND THAT BUYER(S) HAVE READ AND UNDERSTAND THE BACK OF THIS AGREEMENT.

Greenbriar Marketing          DEALER

By Lawrence _____ Pres.   Approved

SIGNED X Jay Griscom          BUYER
SOCIAL SECURITY NO.
SIGNED X Juanita Griscom      BUYER
SOCIAL SECURITY NO.

A PLAIN LANGUAGE PURCHASE AGREEMENT

WHITE - Original      YELLOW - Duplicate      PINK - Triplicate

## ADDITIONAL TERMS AND CONDITIONS

Buyer understands that the term "unit" used in this agreement describes the Manufactured Modular Home or any item or combination of items as described on the front of this agreement. Buyer further agrees (continued from the other side of the Contract)

1. **IF NOT A CASH TRANSACTION** If Buyer does not complete this purchase as a cash transaction, Buyer knows before or at the time of delivery of the unit purchased, Buyer will enter into a retail installment contract and sign a security agreement or other agreement as may be required to finance Buyer's purchase.
2. **TITLE** Title to the unit purchased will remain with the Dealer until the agreed upon purchase price is paid in full in cash, or until Buyer has signed a Retail Installment Contract accepted and approved by Dealer under a construction draw schedule approved in writing by Dealer. In the event payment is to be made under a Construction Draw Schedule, that Construction Draw Schedule has to be approved in writing by Dealer, and all payments required hereunder must be made to Dealer even though the physical delivery of unit may occur at a later date.
3. **TRADE-IN** If Buyer is trading a used car, manufactured home, trailer or other vehicle, Buyer will give Dealer the original bill of sale or the title to the trade-in. Buyer promises that any trade-in which Buyer gives is owned by Buyer and is free of any lien or other claim except as noted on the other side of this contract. Buyer promises that all taxes of every kind levied against the trade-in have been fully paid. If any government agency makes a levy or claims a tax lien or demand against the trade-in, Dealer may at Dealer's option either pay it and Buyer will reimburse Dealer on demand, or Dealer may add that amount to this contract or at its option resell the trade-in and apply the proceeds received.
4. **REGISTRATION OR LICENSE OF TRADE-IN** If Buyer has a trade-in and it is registered or licensed in a state and not registered or licensed as required. If Dealer handles the registration or licensing of the trade-in, Buyer will pay any and all expenses and registration or licensing fees contract as if had been originally included.
5. **REAPPRAISAL OF TRADE-IN** If Buyer is making a trade-in and it is not delivered to Dealer at the time of the original appraisal and if later, on delivery, it appears to Dealer that there have been material changes made in furnishings or accessories, or in its general physical condition, Dealer may make a reappraisal. This later appraisal value will then determine the allowance to be made for the trade-in.
6. **FAILURE TO COMPLETE PURCHASE** If Buyer fails or refuses to complete the purchase, Dealer may keep that portion of Buyer's cash deposit which will adequately compensate Dealer for Dealer's actual, consequential and incidental damages and all other damages, losses or expenses which dealer incurs because of Buyer's failure to complete the purchase. If Buyer has not given Dealer a cash deposit, or the deposit is inadequate but Buyer has given Dealer a trade in, Dealer may sell the trade in at public or private sale and apply money received from such sale to Dealer's losses. Retention of a cash deposit or application of sales proceeds shall be in addition to and not to the exclusion of any other legal rights and remedies Dealer may have. If Dealer prevails in any legal action against Buyer to collect money due under this contract, Buyer agrees to reimburse Dealer for its reasonable attorney's fees, costs and expenses in prosecuting or defending against any such legal action, to be no less than 20% of unpaid balance recovered or the actual attorney expenses incurred, whatever is greater.
7. **CHANGES BY MANUFACTURER** Buyer understands that the manufacturer may make changes in the model or designs or any accessories and parts from time to time, if the manufacturer does make changes, neither Dealer nor the manufacturer are obligated to make the same changes in the unit Buyer is purchasing and covered by this order, either before or after it is delivered to Buyer.
8. **DELAYS** Buyer will not hold Dealer liable for delays caused by the manufacturer, accidents, strikes, fires or any other cause beyond the Dealer's control. TIME IS NOT MADE OF THE ESSENCE IN THE DELIVERY OF THE UNIT UNLESS OTHERWISE SPECIFIED IN THIS CONTRACT AND/OR AGREED TO BY DEALER IN WRITING. Dealer is not responsible for any delays associated with financing, permitting or any activity performed by any third party, whether or not that activity is related to this Contract.
9. **INSPECTION** Buyer has examined the product and finds it suitable for Buyer's particular needs. Buyer has relied upon Buyer's own judgment and inspection in determining that it is of acceptable quality. On the special unit ordered, Buyer has relied on Buyer's inspection of display model(s), the brochures and bulletins and/or floor plan provided to Dealer by the Manufacturer, in making Buyer's decision to purchase the unit described on the reverse side of this agreement.
10. **WARRANTIES AND EXCLUSIONS** BUYER UNDERSTANDS THAT THERE ARE NO EXPRESSED OR IMPLIED WARRANTIES MADE BY DEALER CONCERNING THE UNIT PURCHASED. DEALER HAS DESCRIBED TO THE BUYER THE MANUFACTURER WARRANTIES AND HOME COMPONENT WARRANTIES ORIGINAL COPIES OF WHICH WILL BE PROVIDED TO BUYER AT FINAL SETTLEMENT. THE DEALER WILL ASSIST BUYER IN PROCESSING MANUFACTURER WARRANTY CLAIMS ONLY. DEALER HAS EXPLAINED AND BUYER UNDERSTANDS THAT THE MANUFACTURER'S EXPRESS WARRANTIES HAVE NOT BEEN MADE BY THE DEALER AND THAT THE DEALER IS NOT THE AGENT OF THE MANUFACTURER FOR WARRANTY PURPOSES EVEN IF DEALER PARTICIPATES IN WARRANTY WORK. BUYER AGREES AND UNDERSTANDS THAT ALL OTHER WARRANTIES INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY AND IMPLIED FITNESS FOR A PARTICULAR PURPOSE AND TITLE IMPLIED WARRANTY OF HABITABILITY ARE EXCLUDED FROM THIS TRANSACTION.
11. **LIMITATION OF DAMAGES** This transaction may be subject to Manufactured Home Dispute Resolution Program. If this program applies to your transaction, a separate notice will be provided to you by Dealer at the time of the signing of the Contract. If Buyer is making any claims against Dealer outside of any applicable dispute resolution program or if that program is not applicable to this transaction, the Buyer must notify Dealer in writing any claimed Contract deficiencies and/or Contract breaches, whether known by Buyer or not, within one (1) year from the date of delivery of the unit. Any claim made by Buyer against Dealer arising out of this Contract is not valid unless notification of such claim has been made to Dealer by Buyer as required by this provision. Buyer must exhaust all dispute resolution procedures and warranty claims and remedies prior to any legal action against Dealer with proof of the final processing of those remedies prior to initiating any legal action hereunder.
12. **INSURANCE** Buyer understands that Buyer is **not** covered by insurance on the unit purchased until accepted by an insurance company, and Buyer agrees to hold Dealer harmless from any and all claims due to loss and damage prior to acceptance of insurance coverage by an insurance company.
13. **CONTROLLING LAW AND PLACE OF SUIT** Jurisdiction over interpretation and/or enforcement of this contract is in Lehigh County, Pennsylvania only. No legal proceedings shall be filed in any other county or any other state without Dealer's express prior written consent. Buyer agrees to reimburse Dealer for all costs associated with transferring venue to Lehigh County, Pennsylvania, in the event any suit is filed in an improper forum or venue.
14. **IF PART INVALID REST OF CONTRACT SAVED** Dealer and Buyer agree that each portion of this contract is independent and if any paragraph or provision violates the law and is unenforceable, the rest of the contract will be valid.
15. **DELIVERY AND PLACEMENT** Delivery of the unit is included in the purchase price unless otherwise indicated. Dealer's agreement to transport the unit purchased is based upon Buyer's assurance that travel will be along acceptable all-weather surfaced roads, fully open and accessible from point of origin to Buyer's point of delivery. Buyer assumes all responsibility for proper preparation of Buyer's property to both receive and locate the unit purchased. If Dealer must hire extra labor and/or equipment to deliver and/or to locate the unit because of site conditions, Buyer shall assume responsibility for all additional costs upon presentation of a bill by Dealer for its additional costs. Dealer shall not be responsible to perform any additional or remaining contract work until all additional costs are paid. Buyer assumes all responsibility for providing a code approved foundation upon which the home is to be set unless Dealer has agreed to perform foundation sitework as specified in this contract or an addendum hereto. Buyer agrees that the sewer must be stubbed out of the ground; the water line must be capped; and the electric line must be connected to a meter pole with a proper receptacle within 20 feet of the electric box inside of the home.
16. **CONNECTION, PERMITS AND CHANGES** Buyer understands that Dealer is not permitted to make plumbing or electrical connections or connection of certain natural gas or propane appliances where state or local ordinance require a licensed plumber or electrician to do the work. Dealer is not responsible for obtaining permits or for any local, county or state permits required by local or state building codes. Buyer understands that Dealer is not responsible for making changes to plumbing, electrical or construction changes required by special building ordinances or laws. Buyer will pay the costs of any changes needed for compliance with local, county or state laws or zoning requirements.

# EXHIBIT B

J & J BOOK MARKETING LLC
JAY A. GRISCOM
JUANITA GRISCOM
150 OLIPHANT MILL RD.
WOOLWICH TOWNSHIP, NJ 08085

55-763/312

2465

DATE 12/28/16

PAY TO THE ORDER OF   Greenbriar Marketing + Management          $ 28,000 00/100

Twenty Eight Thousand and 00/100 ———— DOLLARS

**Fulton Bank**
of New Jersey

LISTENING IS JUST THE BEGINNING.®

MEMO

Juanita Griscom   MP

⑈031207636⑈   1100184651⑈ 2465

1100184651 2465 $28,000.00 01/03/2017 310426020

537941124740 150410    20170103 000000001100184651
TRN_DEBIT    JCAMAC3         2800000
Lower Macungie 0379     94004 5379 7   0148

For Deposit Only

1100184651 2465 $28,000.00 01/03/2017 310426020

# EXHIBIT C

MALKAMES LAW OFFICES

509 LINDEN STREET

ALLENTOWN, PA. 18101-1415

WILLIAM G. MALKAMES
MARK MALKAMES
WILLIAM KURT MALKAMES

TELEPHONE (610) 821-8327
FAX (610) 821-5651
E-MAIL: mkoffice@malkameslaw.com

July 10, 2017

Jay and Juniata Griscom
150 Oliphants Mill Road
Woolwich Township, NJ 08085
By email: juanitagriscom@yahoo.com

Dear Mr. & Mrs. Griscom:

I represent Greenbriar Marketing & Management Inc. which has contacted me concerning your email of May 26, 2017. Greenbriar has asked me to reply in its behalf.

I draw your attention to your contract with Greenbriar Marketing & Management dated December 29, 2012. Please note that your contract in bold letters on the front of the contract provides: "THIS CONTRACT CONTAINS NO PROVISION FOR REFUND OF THE DOWN PAYMENT IN THE EVENT THAT THE BUYER FAILS TO COMPLY WITH ITS TERMS AND CONDITIONS". Please also note Paragraph 6 of the Contract. If a Buyer fails or refuses to complete the purchase, Dealer may keep that portion of the cash deposit which will adequately compensate Dealer for Dealer's consequential and incidental damages and all other damages, losses or expenses that Dealer incurs because of the Buyer's failure to complete the purchase.

Greenbriar takes exception to your statement that "Time was of the essence at the onset of the plan". Time was not made of the essence unless specified in the contract (see Paragraph 8).

Further, notwithstanding the above, Greenbriar especially takes exception to your statement that "due to time restraints and way past the timing of what (you) needed and requested on December 28" that Greenbriar is responsible for the failure of this transaction to complete. Greenbriar was, has been and is ready, willing and able to deliver the home you ordered and requested. Greenbriar has asked me to refresh your recollection regarding events after you executed the contract as follows:

a.      Beginning in January of 2017 you called Greenbriar requesting a delay of your order due to the concerns about the strength of your contract with your home buyer for your existing home. That delay lasted two weeks.

b.      On January 18, 2017 you made changes to the utility room.

c.      Greenbriar provided email changes to you on February 7, 2017; Greenbriar did a site inspection and again went over the home with you on February 8, 2017.

d.      You made utility room changes on February 16, 2017.

e.      On February 17, 2017 you began to look at a Mulberry lot model questioning cost for that different home.

f.      On February 22, 2017 and February 23, 2017 you were requested to sign prints so that Greenbriar can order your home. Changes were made to the prints on February 23, 2017.

g.      On February 23, 2017 you contacted Greenbriar's President Lawrence Higgins requesting an additional delay in your order because the buyers of your home, according to you, were challenging you on the state of your septic system. You advised that you were in negotiations with your buyer (this delay lasted another approximate 2 weeks).

h.      On February 24, 2017 the prints were again revised with changes.

i.      On February 27, 2017 you stated additional home/site work questions.

j.      Emails were received from your engineer on March 1, 2017.

k.      On March 1, 2017 drawings came in with more changes (after 5 p.m.); drawings were sent back to you on March 2, 2017 and Greenbriar addressed more questions.

l.      On March 6, 2017 sealed plans were ordered (at Greenbriar's significant cost) because Greenbriar received an email stating you would cancel if you did not have revised prints. The factory promised the revised prints by March 16, 2017.

m.      On March 16, 2017 you questioned whether changes to the drawings would affect the sealed printed. On March 27, 2017 you questioned when plans were ordered and were provided with the check stub and a copy of the email as proof of the ordering of the plans.

n.      On March 28, 2017 you gave Greenbriar a deadline to receive the plans by March 31, 2017.

o.      On March 31, 2017 the prints were received from the factory unsealed and forwarded to your engineer and to you.

    p.  On April 5, 2017 the plans were sent (front elevation incorrect).  You advised that you could not download the prints (even though your engineer and Greenbriar were able to download those prints).  The prints were printed and scanned and resent to you on April 6, 2017.

    q.  On April 8, 2017 you had more questions.  On April 10, 2017 you requested window changes in the kitchens.  On the same date, you advised that you liked the window but did not like the lost cabinets.  You advised you wanted a transom over the picture window.

    r.  On April 11, 2017 you added you added lights in the kitchen.  On that day, sealed prints were again sent to you and the engineer.

    s.  On April 12, 2017 you were sent specifications on the appliances changing to a microwave/wall oven and cooktop.  The cabinets had to be changed.

    t.  On April 25, 2017 you requested an on-site range hood.  You questioned the width of the opening for the range hood desiring 36" when the opening was only 30".

    u.  On April 26, 2017 you were requested to review the plans so that Greenbriar could order the home as soon as your received your permits (you were/are responsible under the contract for your permits see Paragraph 16).

    v.  On April 28, 2017 the factory advised that they could change your range hood to 36" opening but that there would be voids and additional spaces in the cabinets.  You decided to stay with the 30" opening.

    w.  On April 28, 2017 your raised questions on the knobs and faucets and you received a response on May 1, 2017.  You advised that you wanted the plans to again be revised to reflect these changes.

    x.  On May 12, 2017 Greenbriar spoke with your contractor.  You finally signed a confirmation to order on May 12, 2017 (with more changes).  A change order was executed on May 12, 2017.

  Greenbriar is extremely disappointed to receive your letter not just purporting to cancel the order, but trying to shift blame for delay to Greenbriar.  Greenbriar has been ready willing and able to perform and could not and would not do so given your constantly changing desires.  Greenbriar is not being critical notwithstanding its frustration in addressing your changing requests; obviously, however, the reasons for any delay are not attributable to Greenbriar somehow dragging its feet on your transaction.  I trust you can also see from the above chronology (all of which is documented in Greenbriar's file and elsewhere) that Greenbriar in

fact was very responsive to your changing requests. There is nothing more that Greenbriar would have liked to accomplish than to bring your transaction to completion.

Equally disappointing is that Greenbriar understands that you purchased a home from a competitor. We believe this is in fact is the reason why you now wish to cancel the transaction. This is certainly disappointing given Greenbriar's attempts to make you a satisfied customer.

Greenbriar would be willing to consider releasing you from further liability on your contract provided a Mutual Release is executed and no further work is required.

Feel free to contact me or to have your attorney contact me at his or her convenience.

Very truly yours,

Mark Malkames, Esquire

MM/sd
Cc: Greenbriar Marking and Management

THIS LETTER IS FROM A DEBT COLLECTOR. UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL: OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH JUDGMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR